## ON APPEAL FROM THE COURT OF CHANCERY, AND THE PREROGATIVE COURT.

### JUNE TERM, 1921.

BENJAMIN C. GARRETT, administrator,

*v.*

ESPERANZA MINING COMPANY et al.

[Decided November 14th, 1921.]

A broker who had a contract to sell the mining property of a corporation for a stated commission to be paid by the corporation, and who procured a purchaser, which acquired the property by purchasing all the stock of the corporation, has no equitable right to require the purchaser to pay the commission after the vendor's failure to do so, in the absence of any agreement to that effect by the purchaser, merely because the vendor has parted with all its property so that it cannot be forced to pay the commission.

On appeal from a decree of the court of chancery advised by Vice-Chancellor Stevenson, whose opinion is reported in *91 N. J. Eq. 163.*

149

*Mr. J. W. Rufus Besson* and *Mr. Maximilian T. Rosenberg,* for the appellant.

*Messrs. Collins & Corbin* and *Mr. Louis Marshall* (of the New York bar), for the respondents.

The opinion of the court was delivered by

GUMMERE, CHIEF-JUSTICE.

The bill of complaint in this cause was filed by one Harris, who died *pendente lite.* Upon his death his administrator, the present appellant, was substituted in his place. By it the complainant seeks to recover from the defendants the Esperanza Mining Company and the Guggenheim Exploration Company, or one of them, the sum of $202,500, alleged to have been earned as a commission by one Barnar, a mining broker, in bringing about the sale to them for $2,025,000 of the mining property of a Mexican corporation known as the Compania Minera la Esperanza y Anexes, and hereafter called the Mexican company. Prior to the filing of the bill Barnar assigned his claim to this commission to Harris, and it is for the purpose of enforcing Barnar's alleged rights that the bill is filed.

The case set out in the bill and attempted to be proved by the complainant was that Barnar was employed as a broker by the Mexican company to obtain a purchaser for the company's property; that the employment was under a written contract, by the terms of which he was to receive a commission of ten per cent. in case he was successful in bringing about a sale; that thereupon Barnar, acting as broker for the Mexican company, entered into negotiations with the Guggenheim Exploration Company, the purpose of which was to bring about the purchase by that corporation of the Mexican company's property; that as a result of the negotiations the Guggenheim company caused an investigation to be made into the character of the Mexican company's property for the purpose of ascertaining its value and the desirability of acquiring it; that after completing this investigation it concluded to purchase the property, and did so through the instrumentality of a New Jersey corporation which it caused to be

organized for the purpose, and known as the Esperanza Mining Company; that this latter company made the purchase, not directly, but through the acquisition of the stock of the Mexican company by exchanging therefor its own stock, share for share, the value of the stock so exchanged being $2,025,000; that as a result of this transaction the possession and control of the Mexican company's property passed into the hands of this New Jersey corporation, which also became the equitable owner thereof through its holding of the stock; and, finally, that the Mexican company defaulted in the payment of the commission which it had obligated itself to pay.

The theory upon which the bill is filed, as stated in the brief of appellant's counsel, is, that the Mexican company having parted with its property to the Esperanza Mining Company, so that it has no property which can be reached by the complainant, the Esperanza Mining Company, the present owner of the property, having taken title with notice of the claim of Barnar, has become liable to pay this debt of the Mexican company to the extent of the property acquired by it; and that it holds the same charged with a trust in favor of the complainant as Barnar's assignee.

In the court of chancery a large amount of testimony was taken, the purpose of which was to show whether or not Barnar was the producing cause of the sale which was actually consummated; and, after a careful consideration and analysis of it, the learned vice-chancellor concluded that the purchase had been brought about through agencies with which Barnar was in no way connected, and that, therefore, he had not earned the commission which the complainant seeks to recover in this litigation. In the view of the case which we take we do not find it necessary to consider and weigh the testimony. The claim of Barnar to the commission must rest fundamentally upon the proposition that the sale as consummated was brought about through his efforts; for it is only upon the theory that a broker is the producing cause of the sale and purchase that he is entitled to recover commissions agreed by the vendor to be paid to him for bringing it about.

For the purpose of our decision, we assume, contrary to the finding of the vice-chancellor, that Barnar was the producing cause of the sale and purchase, and that, therefore, he had earned his commission. But, this fact being assumed, it is difficult for us to understand upon what theory he can compel the very parties whom he induced to purchase the property at an agreed-upon price to pay ten per cent. in excess of that sum merely because the vendor, who contracted to pay his commission, has failed to do so, and, by parting with the title and control of the very property which was the subject-matter of the negotiations, rendered itself unable to meet that obligation. So far as we are aware, it has never before been suggested that a broker who has been employed by the owner of the property to obtain a purchaser therefor, under an agreement that, in case the broker produces a purchaser able and willing to buy at the vendor's figure, the latter will pay a stipulated commission, can hold the purchaser responsible for the performance of the vendor's contract in that regard in case the latter defaults in the payment of the commission, and, by conveying the very property which was the subject-matter of the negotiations, divests himself of assets to which the broker could otherwise look for his compensation. The object of the broker is to produce a satisfactory purchaser, able and willing to pay the price at which the vendor has agreed to sell, and, when he has succeeded in doing this, the purchaser is entitled to the bargain which he has been induced by the broker to make—that is, to have the property conveyed to him upon the payment of the agreed-upon price; and when he has done this and has received a conveyance, neither the vendor nor the broker has any legal or equitable right to insist that the purchaser shall pay in addition to the purchase price such commissions as the vendor has agreed to pay to the broker.

We hold, therefore, that when a broker proves that he has induced the purchaser to acquire the property of his principal by paying the agreed-upon price, he thereby demonstrates that he has no claim upon the purchaser for the payment of the commission which the vendor has agreed to pay, unless the purchaser himself has contracted to pay this commission in case of the default of the vendor to do so; and that, consequently, the pur-

chaser takes the property free from any trust imposed upon it for the benefit of the broker to the extent of the latter's unpaid commissions.

The decree below will be affirmed.

*For affirmance*—THE CHIEF-JUSTICE, SWAYZE, TRENCHARD, PARKER, BERGEN, MINTURN, KALISCH, BLACK, WHITE, HEPPENHEIMER, WILLIAMS, GARDNER, ACKERSON, VAN BUSKIRK—14.

*For reversal*—None.